UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: LIRETTE
AIRBOAT SERVICE, LLC

CIVIL ACTION

NO: 23-5229

SECTION: "H"

### ORDER AND REASONS

Before the Court is Limitation Claimant Keith Prieur's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 7). For the following reasons, the Motion is **GRANTED**.

### BACKGROUND

Limitation Petitioner Lirette Airboat Service, LLC filed this limitation action as a result of an incident in which Limitation Claimant Keith Prieur sustained injuries aboard Petitioner's airboat. Claimant contends that he was injured when the airboat in which he was riding struck a tree stump in a marsh, and he was ejected from the boat. Claimant was working for Entergy Louisiana, LLC conducting a pre-construction site visit in the Jean Lafitte National Historical Park and Preserve at the time of the incident; Petitioner had been hired to transport Claimant and other individuals on airboats for the inspection. Prior to the filing of this Limitation Action, Claimant had filed a

1

negligence action against Petitioner in the 24th Judicial District Court of Louisiana.

In the instant Motion, Claimant moves for dismissal of Petitioner's Limitation Action, arguing that this Court lacks admiralty jurisdiction over his tort claim.

## LEGAL STANDARD

A Rule 12(b)(1) motion challenges the subject matter jurisdiction of a federal district court. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[1] In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts.[2] The proponent of federal court jurisdiction—in this case, the Petitioner—bears the burden of establishing subject matter jurisdiction.[3]

## LAW AND ANALYSIS

Federal admiralty jurisdiction over a tort claim requires that the tort have a maritime location and maritime connection.[4] "The location test is satisfied if the tort occurred on navigable waters or if the injury occurred on

---

[1] Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998).
[2] Den Norske Stats Oljesels kap As v. Heere MacVof, 241 F.3d 420, 424 (5th Cir. 2001).
[3] *See* Physicians Hosps. of Am. v. Sebelius, 691 F.3d 649, 652 (5th Cir. 2012).
[4] *See* Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995).

land but was caused by a vessel on navigable waters."[5] The connection test is satisfied if two conditions are met. "First, the general features of the type of incident involved must have a potentially disruptive impact on maritime commerce. Second, the general character of the activity giving rise to the incident must show a substantial relationship to traditional maritime activity."[6]

Claimant argues that the location test is not satisfied because his injury did not occur on navigable waters. "[N]avigable waters of the United States are those waters capable, in fact, of navigation in interstate travel or commerce, and distinctions between natural and man-made bodies of water are immaterial."[7] Stated differently, "[w]aterbodies are navigable when, in their ordinary condition, they can serve as highways for commerce, over which trade and travel are or may be conducted in customary modes."[8] "Commerce is defined as activity related to the business of shipping."[9]

Claimant presents the following evidence in support of his contention that the area in which he was injured is non-navigable. In the Incident Report completed on the date of the incident, an employee of Petitioner described the incident as follows:

> At about 10 am the airboats left the landing heading to inspect pole in around Bayou Segnette area. Airboats were running a "fresh trail" in grasses area with grass height about 4-5' tall. (There were no pre-existing trails to follow) Airboat AL#15 was leading the way with airboat AL#3 following behind about 200' in

---

[5] *In re* La. Crawfish Producers, 772 F.3d 1026, 1029 (5th Cir. 2014).
[6] *Id.* (quotations and citations omitted).
[7] Sanders v. Placid Oil Co., 861 F.2d 1374, 1377 (5th Cir. 1988).
[8] Dardar v. Lafourche Realty Co., 55 F.3d 1082, 1085 (5th Cir. 1995).
[9] Strother v. Bren Lynn Corp., 671 F. Supp. 1118, 1119 (W.D. La. 1987), *aff'd*, 834 F.2d 1023 (5th Cir. 1987).

his trail. Airboat AL#15 had one passenger from National Park Service. Airboat AL#3 had two passengers, one from T.Baker Smith and one from Entergy. At about 10:30 am, airboat AL#15 stop to inspect a power pole. Airboat operator on AL#3 saw him stop so he veered to the right to stop the [sic] in a small area of water. While turning the airboat it hit a small stump beneath the grass line causing the airboat to tilt upwards on the right side. The 2 passengers slid to their left, hitting the seat handle and rolled out of the airboat onto the marsh grass.[10]

Claimant also presents evidence confirming the approximate coordinates of the location of the incident. A Google Earth image of that location provided by Claimant depicts a grassy, marshy area.

In response, Petitioner does not dispute that the area in which the incident occurred was an inland marsh or that the area was shallow and contained grass. It points out only that the Incident Report described the location of the incident as "Bayou Segnette, Lafitte, Louisiana."[11] It argues that the incident occurred in a tributary of Bayou Segnette that contained grasses but that there is no evidence in the record that the area "mostly consisted of vegetation or grass."[12] It also argues that the coordinates of the location of the incident provided by Claimant are "approximate."[13]

The burden of establishing subject matter jurisdiction, however, is Petitioner's. Petitioner does not provide this Court with any evidence suggesting that the area where its airboat hit a stump under the grass line is "capable, in fact, of navigation in interstate travel or commerce."[14] Rather, the

---

[10] Doc. 7-4.
[11] *Id.*
[12] Doc. 8.
[13] *Id.*
[14] *Sanders*, 861 F.2d at 1377.

4

evidence in the record suggests that the area was a marsh with grass 4 to 5 feet tall in which there were no pre-existing trails through which to navigate. Further, the area was being traversed by an airboat, which are "constructed as a means of transportation across non-navigable waters."[15]

This court has generally "been reluctant to describe inland marshes as navigable waters."[16] In *Duplantis v. Petroleum Helicopters, Inc.*, the court found that a marshy area averaging 3 to 5 feet deep was non-navigable.[17] In *Strother v. Bren Lynn Corp.*, the court found that an area with small amounts of water between zero and three feet deep and mostly grass and vegetation was non-navigable.[18] Likewise, the Fifth Circuit in *In re Destiny Drilling (USA) Inc.* held that a shallow and vegetation-choked marsh was non-navigable.[19] And in *Dardar v. Lafourche Realty Co.*, the Fifth Circuit held that several bayous that were shallow, full of vegetation, and terminating in marsh were non-navigable.[20] Here too, the area at issue is a grassy, shallow, inland marsh, and the Court therefore finds no reason to hold differently than other courts considering similar areas.

In support of its position, Petitioner relies solely on the court's decision in *Belk v. Entergy Louisiana, LLC*.[21] There, the court held a water body to be navigable where:

> This servitude canal was described by the LDWF Report as having thick vegetation and a depth of nearly two feet of water, however

---

[15] *In re* Destiny Drilling (USA) Inc., 184 F.3d 816, 816 (5th Cir. 1999).
[16] Belk v. Entergy Louisiana, LLC, No. 22-1443, 2022 WL 17083381, at *2 (E.D. La. Nov. 18, 2022).
[17] 1993 WL 370619, at *2 (E.D. La. Sept. 10, 1993).
[18] 671 F. Supp. at 1118.
[19] 184 F.3d at 816.
[20] 55 F.3d 1082, 1085 (5th Cir. 1995).
[21] 2022 WL 17083381, at *2.

the center of the canal has a clear path that is devoid of all vegetation. The Tangipahoa River serves as the only means of ingress and egress for the canal, and the canal can be traversed at a high rate of speed coming directly from the river.[22]

Petitioner argues that *Belk* stands for the proposition that inland marshes are not explicitly excluded from being found to be navigable. Even so, Petitioner has not presented any evidence similar to that considered by the court in *Belk*. Specifically, there is no evidence here that any portion of the area at issue had a clear path that was navigable at high speeds. Accordingly, this Court finds that Claimant's injury occurred in non-navigable waters, and the location test for admiralty jurisdiction is therefore not satisfied.

## CONCLUSION

For the foregoing reasons, the Motion is **GRANTED**, and this matter is dismissed for lack of subject matter jurisdiction.

New Orleans, Louisiana this 23rd day of April, 2024.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[22] *Id.*